IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MOUNTAIN MEMORIES ASSISTED
LIVING & RETIREMENT CENTER,**
**Employer Below, Petitioner**

**FILED
February 27, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)  No. 25-ICA-335**        (JCN: 2025007380)

**RICKY MARTIN,**
**Claimant Below, Respondent**

### MEMORANDUM DECISION

Petitioner Mountain Memories Assisted Living & Retirement Center ("Mountain Memories") appeals the July 16, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Ricky Martin timely filed a response.[1] Mountain Memories did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and holding the claim compensable for a posterior labral tear and left shoulder contusion.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Martin is employed by Mountain Memories as a patient care assistant. LPN Jon Arbogast, Mr. Martin's supervisor, submitted a handwritten letter dated February 2, 2025, regarding the injury. Mr. Arbogast indicated that at approximately 6:30 a.m. on the morning of February 2, 2025, Mr. Martin came into the nurses' station and said "[w]here [were] you when all of the fun was going on?" Mr. Arbogast indicated that Mr. Martin told him that he was changing a resident, and she pushed him against the door. Mr. Arbogast stated that Mr. Martin indicated that he was fine and continued to work with no complaints of pain or alteration in his ability to work.

On February 4, 2025, Mr. Martin completed a Mountain Memories Incident Report form. He indicated that he was assisting a resident in the dementia unit who became aggressive, refused care, and shoved him into a bathroom doorway. Mr. Martin stated that

---

[1] Mountain Memories is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq. Mr. Martin is self-represented.

1

he injured his left shoulder and that he had a prior injury to the left shoulder with a labrum repair. Thea Salisbury and Zoe Canfield were identified by Mr. Martin as witnesses to the incident.

On February 5, 2025, Mr. Martin presented to Davis Medical Center with complaints of left shoulder pain, and he was examined by Timothy Sears, M.D. Mr. Martin reported that he was assisting a resident while at work four days ago, when the resident became combative, pushed him, and he struck his shoulder against a doorframe. Mr. Martin reported minimal pain at the time of the incident, but noted increased pain over the past two days with lifting and extension mainly at the shoulder. Regarding his medical history, Mr. Martin indicated that he had a history of previous surgery of the left shoulder, which was a labrum tear repaired by Walter Boardwine, D.O. Physical examination revealed mild to moderate tenderness to palpitation in the anterior lateral aspects of the left shoulder. The tenderness extended into the anterior aspect long course of the proximal biceps tendon. The assessment was a contusion of the left shoulder with pain following an injury that occurred at work.

Mr. Martin completed an Employees' and Physicians' Report of Occupational Injury form dated February 5, 2025. In this form, he indicated that he injured his left shoulder on February 1, 2025, when he was assisting a resident who became aggressive, refused care, and shoved him into a bathroom door frame. The physicians' section of the form was completed by medical personnel at Davis Medical Center. The body part injured was listed as the left shoulder and the injury was listed as contusion/pain. The medical provider indicated that the condition was the direct result of an occupational injury, and that the injury aggravated a prior injury or disease of labral tear of the left shoulder.

On February 7, 2025, and February 21, 2025, Mr. Martin followed up at Davis Medical Center regarding his left shoulder injury and was seen by Carrie Arbogast PA-C. The assessment at both visits was an acute contusion of the left shoulder.

On March 13, 2025, Mr. Martin was seen by Dr. Boardwine and reported that physical therapy helped his left shoulder, but that he still had pain and popping in the left shoulder. Dr. Boardwine opined that Mr. Martin had possibly injured his superior labrum, which fit his mechanism injury "when he was wrestling a heavy person he was taken over and he hit the wall directly forward and went down." Dr. Boardwine assessed other instability of the left shoulder, and recommended an MRI Arthrogram, which would determine if Mr. Martin had an unstable superior labrum anterior and posterior ("SLAP") lesion.

The claim administrator issued an order dated March 24, 2025, which rejected the claim on the basis that Mr. Martin did not sustain an injury or disease in the course of and resulting from his employment. In addition, the claim administrator stated that shoulder

2

pain is a symptom, not a compensable diagnosis. Mr. Martin protested this order to the Board.

An MRI arthrogram of the left shoulder was performed on May 5, 2025. The impression was edema at the distal clavicle and the acromioclavicular joint, and SLAP tear of the superior labrum extending to involve the posterior labrum.

On May 12, 2025, Mr. Martin followed up with Dr. Boardwine regarding his left shoulder injury and reported no improvement in his symptoms. Mr. Martin indicated that he was able to work modified duty, but that he was unable to perform much one-handed work safely. Dr. Boardwine stated that the MRI arthrogram revealed a posterior labral tear now complete from superior posterior to the anchor of the biceps to the 6:00 position. Dr. Boardwine assessed other instability, left shoulder and superior glenoid labrum lesion of the left shoulder. Dr. Boardwine recommended a diagnostic surgical arthroscopy with a ten-point check, followed by a repair of torn structures anticipating the repair of the posterior labrum.

By correspondence dated May 18, 2025, Mr. Martin requested an expedited hearing process. By order dated May 27, 2025, the Board granted Mr. Martin's request to participate in the expedited process on the protest to the claim administrator's March 24, 2025, order, which rejected his claim.

By order dated July 16, 2025, the Board reversed the claim administrator's order rejecting the claim. The Board found that Mr. Martin established that he sustained a posterior labral tear and left shoulder contusion as a result of his employment. It is from this order that Mountain Memories now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mountain Memories argues that the Board was clearly wrong in holding Mr. Martin's claim compensable based on an inaccurate history of the injury contained in Dr. Boardwine's records. Further, Mountain Memories asserts that the Board's expedited adjudication process constitutes an abridgement of the employer's procedural and substantive due process rights in the claim. We disagree.

Three elements must coexist in compensability cases: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, the Supreme Court of Appeals of West Virginia has held that "[i]f an injured employee provides some evidence that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident." Syl. Pt. 2, *Workman v. ACNR Resources, Inc.*, 251 W. Va. 796, 916 S.E.2d 638 (2025) (citing Syl. Pt. 2, *Dunlap v. State Workmen's Comp. Comm'r*, 160 W. Va. 58, 232 S.E.2d 343 (1977).

The SCAWV held in Syl. Pt. 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

The SCAWV clarified its position in Syl. Pt. 5, *Moore v. ICG Tygart Valley*, 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the [compensable] injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continually manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive, it may be rebutted by the employer.

4

Here, the Board found that Mr. Martin established that he sustained a posterior labral tear and left shoulder contusion that occurred in the course of and resulting from his employment at Mountain Memories, which was a discrete new injury. The Board noted that although Mr. Martin had prior right shoulder surgery, the record does not establish any treatment related to the left shoulder prior to the February 1, 2025, injury. While Mountain Memories argues that Dr. Boardwine's description of the mechanism of injury was incorrect, the Board considered this argument below and concluded that Dr. Boardwine's statement was accurate and supported by the evidence of record.[2] *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence.").

Turning to Mountain Memories' argument that the expedited process is "contrary to the applicable statutes," and violated its due process rights, we note that it did not identify any specific statutes.[3] Further, we note that an expedited process is explicitly provided for

---

[2] There appears to be an error in the Board's July 16, 2025, order, which states that "Dr. Boardwine's description of the mechanism of injury was accurate and his opinion that this could have caused the left shoulder injury is not credible and unrefuted in the record." The Board based its order, in part, on the opinion of Dr. Boardwine. The sentence in question also concludes that Dr. Boardwine's opinion was unrefuted. Therefore, it is apparent to this Court that the Board's statement that Dr. Boardwine's opinion was not credible is a clerical error.

[3] Counsel is reminded that cursory, "skeletal" arguments may, and usually will, be deemed waived. See *Mulla v. Ball*, No. 25-ICA-261, 2026 WL 291981, at *2 (W. Va. Ct. App. Feb. 3, 2026) (memorandum decision) (quoting *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011)) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim."). As the Court warned in *Metro Tristate, Inc. v. PSC*, 245 W. Va. 495, 502, 859 S.E.2d 438, 445 (2021), "[l]awyers… should not anticipate that this Court will find or make their arguments for them." At a minimum, counsel should have identified the relevant statutes and explained why what happened was inconsistent with those statutes and violated due process. *See generally id*. at 502 n.10, 859 S.E.2d at 445 n.10 (noting that Rule of Appellate Procedure 10(c) requires not just "a description of the applicable rule(s) of law," but the "application of that law to the facts of record"). Furthermore, although Petitioner generally asserts that the expedited process prevented it from fully investigating a preexisting injury, there is no discussion of what efforts it made to complete its investigation, what information or records it was unable to obtain, or whether it requested an extension or continuance of the Time Frame Order pursuant to West Virginia Code of State Rules 102-1-9.5 (2022) ("Time Frame Orders and scheduled hearings may be extended/continued by agreement of the parties with the

and available pursuant to West Virginia Code § 23-4-1c(a)(3) in cases involving the denial of a claim, the denial of temporary total disability benefits, or the denial of medical authorization. Since the present case involves the denial of a claim, it is the type of case in which the claimant may avail himself of the expedited process. Further, we note that the Board follows procedural rules that govern the expedited process.[4] Therefore, we find no merit in this argument.

Upon review, we conclude that Mountain Memories has not established that the Board's decision was clearly wrong. As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis. Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and holding the claim compensable for a left shoulder posterior labral tear and left shoulder contusion.

Accordingly, we affirm the Board's July 16, 2025, order.

Affirmed.

**ISSUED:** February 27, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

consent of the Board of Review, or upon a showing of good cause, or within the discretion of the Board of Review.").

[4] *See* West Virginia Code R. § 102-1-9 (2022).